## PEOPLE *v.* O'NEIL.[1]

*(Supreme Court, General Term, Fourth Department.　July, 1888.)*

1. CRIMINAL LAW—SUBMITTING QUESTION OF LAW TO JURY—HARMLESS ERROR.
   Where on the evidence adduced at a trial for arson the court should have charged that the house described in the indictment as having been burned by defendant was within the statute against arson, a conviction will not be reversed because the question was erroneously submitted to the jury, who decided it properly.

2. SAME—EVIDENCE—SUBSEQUENT ACTS OF ACCUSED.
   A witness who has testified as to the conduct and conversation of defendant after the alleged arson, relative thereto, may testify that defendant was drinking liquor at the time of such conversations.

3. ARSON—EVIDENCE—JOINT AFFIDAVIT.
   An affidavit made jointly by defendant and the secretary of a corporation, to which defendant had sold the business carried on in the burned building, for the purpose of obtaining insurance thereon, is as competent evidence against defendant as if made by himself alone.

4. SAME—RECEIPT FOR INSURANCE MONEY.
   A receipt given by defendant and said secretary for insurance money is also competent evidence against defendant.

5. SAME—INTEREST IN PROPERTY BURNED.
   The amount of stock owned by defendant in the company to which the business had been sold before the fire is competent as tending to show the interest of defendant in the insurance.

6. SAME—EVIDENCE—MUTILATION OF BOOKS.
   Mutilation of books which would show the interest of defendant in the insured property by the destruction of leaves is pertinent to the issue if done by or at the instance of defendant.

Appeal from court of oyer and terminer, Cortland county.

Indictment against Hugh O'Neil for the arson of a wagon factory at Cortland village. The property was managed by defendant at a salary and a third of the profits, the capital being furnished by two others,—Fitzgerald and Duffy. Being desirous of changing their location, Duffy and Fitzgerald assigned their interest in the business to defendant, who assumed the debts of the firm, and sold the entire stock to the O'Neil Wagon Company, Limited, of Springville. Of the stock of this corporation defendant was to have $20,000, and the balance of the purchase money — $16,679 — was to be paid by notes, but neither the capital stock nor the notes were to be delivered until the property was received at Springville, where a corrected inventory was to be made. The stock was insured in favor of the O'Neil Wagon Company for $40,000, and an adjustment was made for $10,000. Defendant was convicted and sentenced to five years' confinement in the penitentiary, and appeals.

[1] Affirmed by court of appeals. See 19 N. E. Rep. 796.

Argued before HARDIN, P. J., and FOLLETT and MARTIN, JJ.

*R. Champlin* and *J. McGuire*, for appellant.   *H. L. Bronson*, Dist. Atty., for the People.

HARDIN, P. J.   1. Upon the evidence given upon the trial, the trial judge was warranted in holding as a matter of law that the building alleged to have been burned by the defendant, and described in the indictment as well as in the evidence, was embraced within the statute against arson.   Although he submitted comments to the jury upon that subject, and allowed them to find that the building was within the provisions of the statute, no error was committed which the defendant can successfully complain of.   A judgment will not be reversed merely because the judge submitted to the jury a question which he ought to determine himself, where it is clear he ought to have decided it in the same way the jury have found.   *Miller* v. *Insurance Co.*, 2 E. D. Smith, 268; *Cumpston* v. *McNair*, 1 Wend. 457; *Pangburn* v. *Bull*, Id. 345, 352; *Hall* v. *Suydam*, 6 Barb. 83, 88; *Thompson* v. *Roberts*, 24 How. 233, 240.

2. After the fire, which occurred on the 14th of February, a compromise adjustment of the loss sustained by reason of the fire was had with several insurance companies.   Defendant took part in that adjustment, and executed an affidavit, in conjunction with one Conger, who was treasurer of the Springville company, in consummation of formal proofs against the several companies.   In that affidavit, sworn to on the 22d of February, 1884, reference was had to a schedule of the policies existing at the time of the fire upon the property destroyed, showing the amount of insurance to be $20,750, and that a compromise was fixed upon at $10,000; and it was also stated in that affidavit, viz.: "That the fire originated, cause unknown to these deponents, but in our opinion of incendiary origin."   That affidavit was signed and sworn to by the defendant, and was received in evidence against his objection and exception.   A receipt executed by the defendant to one of the insurance companies for its proportion of the compromise adjustment, was received in evidence, against the defendant's objection and exception.   We think this evidence was properly received.   It tended to elucidate the situation of the property at the time of the fire, and the extent of the insurance thereon, and the relations of the defendant thereto, and bore upon the question of the defendant's motive or want of motive in respect to the fire charged to have been caused by his act.   The circumstance that the affidavit was verified by Conger as well as O'Neil, and the circumstance that the receipt was signed by Conger as well as O'Neil, did not render the evidence inadmissible.   It appeared that O'Neil, the defendant, was president of the O'Neil Wagon Company, Limited, and Conger was treasurer of that company.   The acts and declarations of O'Neil, in conjunction with the insurance and the adjustment and the receipt of moneys upon the insurance policies after the fire, were not rendered incompetent because they were in conjunction with Conger.   We therefore think the exceptions taken to that class of evidence are unavailing to the defendant.

3. Nor do we think it was error to receive evidence of the number of shares of stock owned by the defendant in the wagon company organized at Springville, as that fact tended to indicate the extent of his interest in that company, and to develop his relations to the insurance existing upon the property at the time of the fire.   Nor was it error to receive the evidence tending to show how much property had been shipped to the Springville Company, or the arrangement existing with that company in respect to the property and the insurance thereon.   If the books which have been kept in respect to the property relating to the defendant's account had not been mutilated, and had been produced, that would have furnished some evidence of the extent of the defendant's interest in the property remaining in the building at the time of the fire.   If the leaves

torn out of the books which contained the account of the defendant were torn out by the defendant, or by his act, it was not error to receive evidence of such destruction of the books, and to treat the same as bearing upon the motive of the defendant, if the destruction was by him, or caused to be done by him. Such seems to have been the theory upon which the evidence was received and dealt with by the judge in delivering the case to the jury. In effect, the jury were told that the evidence was insignificant and unimportant, unless the mutilation of the book took place by the acts or procurement of the defendant. With this qualification we see no error in receiving or dealing with the evidence in relation to the mutilation of the books.

4. When the witness O'Connor, book-keeper, was upon the stand, he detailed the incidents relating to the books, and facts and circumstances relating to the fire, and the direction received from the defendant in respect to the several items in the accounts, and conversations had with the defendant preceding the fire and shortly thereafter, and narrated some of the preparation made by the defendant to meet the adjusters and ascertain the extent of the loss, and that he burned certain invoices in the stove in the blacksmith shop under the direction of the defendant, and that the defendant told him he had "made up an inventory to settle with the insurance companies," and that the inventory made at the Messenger House "showed a loss of $20,000. He said if he could get $20,000 of the insurance men he would let the Springville men go to hell; he would not go to Springville." After this evidence was given, the witness was permitted, against the objection and exception of the defendant, to state that the defendant "was drinking some. He had a bottle here with him. Well, Conger carried a bottle, and every once and a while Mr. O'Neil would take a slug. The bottle was carried in Mr. Conger's overcoat pocket. I saw O'Neil drinking from that bottle at different times. He told me during the time he was making his adjustment that he had showed the loss by his inventory of something over $20,000." In *Linsday* v. *People*, 63 N. Y. 154, Judge ALLEN says: "The acts and declarations of a party are evidence against him, and whether they tend to fix a crime upon him is for the jury." In *Greenfield* v. *People*, 85 N. Y. 85, Judge MILLER says: "The acts and conduct of a party at or about the time when he is charged to have committed a crime are always received as evidence of a guilty mind; and while, in weighing such evidence, ordinary caution is required, such inferences are to be drawn from them as experience indicates is warranted. And the demeanor of a prisoner at the time of his arrest, or soon after the commission of the crime, or upon being charged with the offense, is a proper subject of consideration in determining the question of guilt. Such indications, however, are by no means conclusive, and must depend greatly upon the mental characteristics of the individual." In *Levy* v. *People*, 80 N. Y. 335, it was said that the conduct of the prisoner after the fire was admissible. In speaking thereof Judge FOLGER says: "It was an act in the prisoner's life, at the time of the occurrence with guilty participation in which he was charged, and it was competent to be shown to the jury. * * * But after-acts of his might be circumstances, according to the nature of them, to show guilty knowledge of purpose and inducement thereto before the fire." We are therefore of the opinion that the verdict ought not to be disturbed because the witness O'Connor testified that at the time of the occurrence of the acts of the defendant which he had detailed the witness was permitted to state that the defendant "was drinking some."

5. Much criticism and complaint are made by the defendant of the charge delivered by the trial judge to the jury. In the third sentence in the charge we find the following language: "Upon you, as jurors, the chief weight rests, because you are the exclusive judges and final judges of all questions of fact." In substance and in spirit the same language was used during the delivery of the charge several times by the trial judge. After commenting upon the sur-

roundings and evidence relating to the motive of the defendant, the judge says: "Those are the surroundings upon his motive, and I leave it to you to say whether that was any motive that would tend to impel the man on to firing that building in the hope that the whole building would be destroyed, and that all evidence as to the amount and value of the goods that were destroyed with it, so the insurance companies would be obliged to depend on his representations, and what he would swear to as to the goods that were there; it is a question for you,—a question of fact,—not only as to whether the motive existed there, but as to what weight the motive has; whether you think, along with the other circumstances in the case, it is satisfactory one in your minds in judging of the question of this man's guilt." Again, he says: "I leave, then, this question entirely with you, to give such weight to them as the circumstances and the surroundings of this man under the circumstances as you think they are entitled to in determining the question of this man's probable guilt." The same intimation was made again at folio 807; also folio 338. Again, in reference to declarations made by the defendant, the trial judge remarks: "If it is true,—I can't say it is so; I can't say to a certainty, —you must take it and judge for of it all the way through as best you can, and you ought not to make use of arbitrary conclusions either way in relation to it, but weigh it carefully to see whether it does address itself to your judgment." Again, in speaking of the force and credit to be given to testimony from certain witnesses, the trial judge remarks: "If you can't find anything, you have the right to give it full credit, and hold that they testified truthfully in relation to it. Whether you see anything in the case that tends to throw discredit upon it is entirely for you." Again, in commenting upon the effect to be given to the testimony of the defendant as a witness, the trial judge adds: "You are the exclusive judges of all this. The court has no right to say to you that you ought to decide what your duty is. The court must dispose of the questions of law that arise in the case, and is responsible for that." Again, he adds: "I leave the case wholly with you. Go at it deliberately, with the idea singly to determination of justice, weighing the evidence, and as it strikes your mind and impresses you that you believe if it fairly weighed effects your judgment that you believe, it is the true criterion, whatever makes you believe from the evidence is true state of things is the true criterion."

At the close of the charge very numerous requests were preferred by the defendant, and several exceptions were taken to expressions used by the court in delivering the body of the charge. In response, the court several times remarked: "I do say to the jury that I will leave that entirely with them to say what inference would be properly drawn,—what weight to give it." In response to an exception "to that portion of the charge where the jury are told that the proof and circumstances, as detailed by Fitzgeralds and Duffy and O'Connor, are terribly damaging to the defendant," the court replied: "The jury may so find; they have the right to." And when the defendant's counsel asked the court to charge "that a conviction for crime cannot be had upon motive alone," the court promptly replied: "Certainly not. I so charge." And when the defendant's counsel followed that by a statement: "That motives only strengthen the circumstances which point to the guilt of the defendant," the court again replied: "I have intended to so charge, and I repeat it." And when the defendant's counsel asked the court to "call the attention of the jury to the further testimony of Smith, that he saw O'Neil loading crating on a hand car," the court promptly replied: "He did so testify,—loading crating sticks on a hand car. I don't claim to have alluded to many of the circumstances and surroundings, but such as seemed most prominent to the court to call their attention to, leaving it to your common sense, as it were, to call to mind any and all circumstances, whether it addresses itself to your judgment in forming a conclusion." In *Jackson* v.

*Packard*, 6 Wend. 415, an observation of the judge during the delivery of his charge upon the evidence was the subject of comment, and in referring thereto Judge SUTHERLAND says: "It was nothing more than the expression of the opinion of the judge upon that point; but it in no respect assumed to take from the jury the right to judge for themselves upon the matter." In *Crandal* v. *Bradley*, 7 Wend. 312, it was said that certain comments made by the court to the jury were "merely intended to express an opinion upon the weight of evidence; not to take the question from the jury," and therefore no error was committed. In *Bruce* v *Westervelt*, 2 E. D. Smith, 441, it was said, viz.: "In submitting to a jury a question of fact, a judge may add the expression of his own opinion in relation thereto, upon the testimony; and such an exercise of his discretion forms no ground for exception." When the Code of Criminal Procedure was adopted, a new statutory provision was made bearing upon the question here involved, and in section 420 of that Code, it is provided: "In charging the jury, the court must state to them all matters of law which it thinks necessary for their information in giving their verdict; and must, if requested, in addition to what it may deem its duty to say, inform the jury that they are the exclusive judges of all questions of fact." In the multitude of requests that were submitted by the defendant, there was none that specifically requested the question of fact to be left to the jury, which the judge refused. While some of the passages used in the body of the charge may have been hastily framed, they resulted from an immature consideration of the evidence, and do not challenge admiration as the most perspicuous and approved comments upon testimony. We must bear in mind that in the fatigues and excitements of trial at *nisi,* the most careful and approved diction is not to be expected. We think the language used in *Sindram* v. *People*, 88 N. Y. 196, when applied to the charge under consideration, warrants the court in refusing to interfere with the verdict. It was there said: "The comments of the trial court in its charge upon the testimony are not ordinarily the subject of legal exception, so long as the questions of fact are left with the jury, with instructions that they are the sole judges thereof." We think the trial judge sufficiently informed the jury that they were the exclusive judges of the facts, and that it was their exclusive province to pass upon the testimony bearing upon the questions relating to the guilt or innocence of the defendant; that the body of the charge and the qualifications made in response to requests confided the important questions of fact to the jury, and followed the rule laid down in the case just cited, as well as the rule laid down in section 420 of the Code of Criminal Procedure. We are therefore disinclined to heed the criticisms made upon the charge, found in the pointed assault made thereon in the brief of the appellant. Whether the defendant was guilty of the crime charged in the indictment or not, upon all of the evidence produced at the trial, was a question for the jury. We are of the opinion that the evidence was sufficient to sustain their finding. Accepting their verdict as being sustained by the evidence, we are constrained to allow it to stand, notwithstanding some passages are found in the charge which we are not inclined to commend as precedents. Order and judgment affirmed, and proceedings remitted to the court of oyer and terminer of Cortland county, with instructions to proceed thereon. All concur.