## Court of Appeals.

### *January*, 1889.

## Supreme Court—General Term—Fourth Department.

### *July*, 1888.

## PEOPLE *v.* O'NEIL.

### Arson.—Circumstantial Evidence.—Res Gestæ.— Charge to the Jury.

#### (By the Court of Appeals and the Supreme Court.)

Upon the trial of defendant for arson, proofs of loss of the burned property executed by defendant, as president, and also by the treasurer of the insured company, were admitted in evidence as bearing upon the question of defendant's guilt. *Held*, that the fact that the affidavit was also verified by the treasurer as well as defendant did not render it inadmissible against defendant; that, though subscribed and sworn to by defendant in his official capacity as president, they were none the less the statements of the individual; that they were admissible from the fact of their being made necessary by the fire, and as being a statement under oath by defendant as an interested party of facts concerning the fire, its consequences and probable cause, and as having some bearing upon the question of the existence or absence of a motive in the defendant for the commission of the crime.

The witness testified, under objection of defendant, that at the time when defendant, after the fire, made certain statements and admissions in regard thereto,—defendant was drinking; that he exhibited great irritation and temper because the books and

whole building had not been destroyed. *Held*, that the admission of this evidence, while remote, bore upon the question of the guilt of defendant, as it tended to show what were his conduct and demeanor when engaged in matters connected with the fire, and in the course and disposition of which he was principally interested and a prominent actor.

Where the trial judge comments upon the facts in charging the jury, but leaves the facts of the case to the jury with instructions that they are the exclusive judges as to all such questions, such comments are not error calling for a reversal of the judgment.

### (BY THE COURT OF APPEALS.)

When the proof relied upon is circumstantial, it must be such as to satisfy the jurors beyond any reasonable doubt of the guilt of the defendant; and under such a rule it is of the essence of justice that no facts or circumstances shall be excluded from the jury which have relation to, or bear upon, the principal fact; not facts which owe their origin to subsequent events, but such as were of necessity connected with, or would have had no existence except for the principal fact.

### (BY THE GENERAL TERM OF THE SUPREME COURT.)

A judgment will not be reversed merely because the judge submitted to the jury a question which he ought to have determined himself, where it is clear that he ought to have decided it in the same way as the jury found.

Appeal from the judgment of the Court of Oyer and Terminer of Cortland County, of February 20, 1886, Hon. FROTHINGHAM FISH, presiding; entered upon a conviction of defendant, Hugh O'Neil, of arson in the third degree.

The judgment of the Court of Oyer and Terminer was affirmed upon appeal, by the General Term of the Supreme Court, in the Fourth Department, July 17, 1888.

The indictment charged the defendant with setting fire to, and burning a building, structure and erection commonly called a carriage-shop, or manufactory.

The facts very fully appear in the opinions of the General Term of the Supreme Court, and of the Court of Appeals.

*R. Champlain,* and *J. McGuire,* for defendant, appellant, at General Term; *Louis Marshall,* for defendant, appellant, in the Court of Appeals.

*Horace L. Bronson,* district attorney, for the people, respondent.

The following was the opinion of the General Term of the Supreme Court:

HARDIN, P. J.—Upon the evidence given upon the trial, the trial judge was warranted in holding, as a matter of law, that the building alleged to have been burned by the defendant and described in the indictment as well as in the evidence, was embraced within the statute against arson.

Although he submitted comments to the jury upon that subject, and allowed them to find that the building was within the provisions of the statute, no error was committed which the defendant can successfully complain of.

A judgment will not be reversed merely because the judge submitted to the jury a question which he ought to have determined himself, where it is clear he ought to have decided it in the same way the jury have found. Miller *v.* Eagle Life & Health Ins. Co., 2 *E. D. Smith,* 268; Cumpston *v.* McNair, 1 *Wend.* 457; Hall *v.* Suydam, 6 *Barb.* 83–88; Thompson *v.* Roberts, 24 *How. (U. S.)* 233–240.

Second. After the fire, which occurred February 14, a compromise adjustment of the loss sustained by reason of the fire was had with several insurance companies.

Defendant took part in that adjustment and executed an affidavit in conjunction with one Conger, who was treasurer of the Springville company, in consummation of formal proofs against the several companies.

In that affidavit, sworn to on February 22, 1884, reference was had to a schedule of the policies existing at the time of the fire upon the property destroyed, showing the amount of insurance to be $20,750, and that a compromise

was fixed upon at $10,000; and it was also stated in that affidavit, viz., "that the fire originated, cause unknown to these deponents, but in our opinion of incendiary origin." That affidavit was signed and sworn to by the defendant, and was received in evidence against his objection and exception.

A receipt executed by the defendant to one of the insurance companies for its proportion of the compromise adjustment was received in evidence against the defendant's objection and exception. We think this evidence was properly received. It tended to elucidate the situation of the property at the time of the fire, and the extent of the insurance thereon, and the relation of the defendant thereto, and bore upon the question of the defendant's motive in respect to the fire charged to have been caused by his act. The circumstance that the affidavit was verified by Conger as well as O'Neil, and the circumstance that the receipt was signed by Conger as well as O'Neil, did not render the evidence inadmissible.

It appeared that O'Neil, the defendant, was president of the O'Neil Wagon Comany (limited), and Conger was treasurer of that company. The acts and declaration of O'Neil, in conjunction with the insurance, and the adjustment and the receipts of moneys upon the insurance policies after the fire, were not rendered incompetent, because they were in conjunction with Conger. We, therefore, think the exceptions taken to that class of evidence are unavailing to the defendant.

Third. Nor do we think it was error to receive evidence of the number of shares of stock owned by the defendant in the wagon company, organized at Springville, as that fact tended to indicate the extent of his interest in that company, and to develop his relations to the insurance existing upon the property at the time of the fire.

Nor was it error to receive the evidence tending to show how much property had been shipped to the Springville company, or the arrangement existing with that company in respect to the property and the insurance thereon.

If the books which had been kept in respect to the property relating to the defendant's account had not been mutilated, and had been produced, that would have furnished some evidence of the extent of the defendant's interest in the property remaining in the building at the time of the fire. If the leaves torn out of the books, which contained the accounting of the defendant, were torn out by the defendant, or by his act, it was not error to receive evidence of such destruction of the books, and to treat the same as bearing upon the motive of the defendant, if the destruction was by him, or caused to be done by him. Such seems to have been the theory upon which the evidence was received and dealt with by the judge in delivering the case to the jury. In effect the jury were told that the evidence was insignificant and unimportant unless the mutilation of the books took place by the acts or procurement of the defendant.

With this qualification, we see no error in receiving or dealing with the evidence in relation to the mutilation of the books.

Fourth. When the witness O'Connor, bookkeeper, was upon the stand, he detailed the incidents relating to the books, and facts and circumstances relating to the fire and the direction received from the defendant in respect to the several items in the accounts, and conversations had with the defendant preceding the fire and shortly thereafter; and narrated some of the preparation made by the defendant to meet the adjusters and ascertain the extent of the loss; and that he burned certain invoices in the stove in the blacksmith's shop, under the direction of the defendant, and that the defendant told him that he had " made up an inventory to settle with the insurance companies," and that the inventory made at the Messenger House " showed a loss of $20,000." He said if he " could get $20,000 of the insurance men he would let the Springville men go to hell, he would not go to Springville."

After this evidence was given, the witness was permitted, against the objection and exception of the defendant, to state

that the defendant " was drinking some. He had a bottle there with him. Will Conger carried a bottle, and every once and a while Mr. O'Neil would take a slug. The bottle was carried in Mr. Conger's overcoat pocket. I saw O'Neil drinking from that bottle at different times. He told me during the time he was making his adjustment that he had showed the loss by his inventory of something over $20,-000."

In Lindsay v. People (63 N. Y. 154), Judge ALLEN says: " The acts and declarations of a party are evidence against him, and whether they tend to fix a crime upon him is for the jury."

In Greenfield v. People (85 N. Y. 85), Judge MILLER says: " The acts and conduct of a party at or about the time when he is charged to have committed a crime are always received as evidence of a guilty mind, and while, in weighing such evidence, ordinary caution is required, such inferences are to be drawn from them as experience indicates is warranted. And the demeanor of the prisoner at the time of his arrest, or soon after the commission of the crime, or upon being charged with the offense, is a proper subject of consideration in determining the question of guilt. Such indications, however, are by no means conclusive, and must depend greatly upon the mental characteristics of the individual."

In Levy v. People (80 N. Y. 335), it was said that the conduct of the prisoner after the fire was admissible. In speaking thereof, Judge FOLGER says, viz: " It was an act in the prisoner's life, at the time of the occurrence, with guilty participation in which he was charged, and it was competent to be shown to the jury, . . . but after acts of his might be circumstances, according to the nature of them, to show guilty knowledge of purpose and inducement thereto before the fire."

We are, therefore, of the opinion that the verdict ought not to be disturbed, because the witness O'Connor testified that, at the time of the occurrence of the acts of the de-'

fendant, which he had detailed, the witness was permitted to state that the defendant " was drinking some."

Fifth. Much criticism and complaint are made by the defendant of the charge delivered by the trial judge to the jury. In the third sentence in the charge, we find the following language. · "Upon you, as jurors, the chief weight rests, because you are the exclusive judges, and final judges of all questions of fact." In substance and in spirit the same language was used during the delivery of the charge several times by the trial judge.

After commenting upon the surroundings and evidence relating to the motive of the defendant, the judge says: " Those are the surroundings upon the motive, and I leave it to you to say whether that was any motive that would tend to impel the man on to firing that building in the hope that the whole building would be destroyed, and that all evidence as to the amount and value of the goods that were there destroyed with it, so that the insurance companies would be obliged to depend on his representations and what he would swear to as to the goods that were there. It is a question for you, a question of fact, not only as to whether the motive existed there, but as to what weight the motive has, whether you think, along with the other circumstances in the case, it is satisfactory one in your minds in judging of the question of this man's guilt." Again he says: " I leave, then, this question entirely with you to give such weight to them as the circumstances and the surroundings of this man, under the circumstances, as you think they are entitled to in determining the question of this man's probable guilt." The same intimation was made again at folio 807, also at folio 838.

Again, in referring to evidence relating to declarations made by the defendant, the trial judge remarks: " If it is true, I can't say it is so; I can't say to a certainty; you must take it, and judge of it all the way through as best you can, and you ought not to make use of arbitrary con-

clusions either way in relation to it, but weigh it carefully to see whether it does address itself to your judgment."

Again, in speaking of the force and credit to be given to testimony from certain witnesses, the trial judge remarks: "If you can't find anything, you have the right to give it full credit and hold that they testified truthfully in relation to it. Whether you can see anything in the case that tends to throw discredit upon it is entirely for you."

Again, in commenting upon the effect to be given to the testimony of the defendant as a witness, the trial judge adds: "You are the exclusive judges of all this; the court has no right to say to you that you ought to decide what your duty is, the court must dispose of the questions of law that arise in the case, and is responsible for that."

And again he adds: " I leave the case wholly with you ; go at it deliberately with the idea singly to determination of justice, weighing the evidence, and as it strikes your mind and impresses you that you believe, if it fairly weighed effects your judgment that you believe it, is the true criterion, whatever makes you believe from the evidence is the true state of things is the true criterion."

At the close of the charge very numerous requests were preferred by the defendant, and several exceptions were taken to expressions used by the court in delivering the body of the charge. In response, the court several times remarked: "I do say to the jury that I will leave that entirely with them to say what inference would be properly drawn, what weight to give it."

In response to an exception "to that portion of the charge where the jury are told that the proof and circumstances, as detailed by Fitzgeralds and Duffy and O'Connor, are terribly damaging to the defendant," the court replied: " The jury may so find; they have the right to." And when the defendant's counsel asked the court to charge that " a conviction for crime cannot be had upon motives alone," the court promptly replied: " Certainly not; I so charge."

And when the defendant's counsel followed that by a statement, viz: "that motives only strengthen the circumstances which point to the guilt of the defendant," the court again replied, "I have intended to so charge, and I repeat it."

And when the defendant's counsel asked the court to call the attention of the jury to the further testimony of Smith, that he saw O'Neil loading crating on a hand-car, the court promptly replied: "He did so testify, loading crating-sticks on a hand-car. I don't claim to have alluded to many of the circumstances and surroundings, but such as seemed most prominent to the court to call their attention to, leaving it to your common sense, as it were, to call to mind any and all circumstances, whether it addresses itself to your judgment in forming a conclusion."

In Jackson v. Packard (6 Wend. 415), an observation of the judge, during the delivery of his charge upon the evidence, was the subject of comment, and in referring thereto Judge SUTHERLAND says: "It was nothing more than the expression of the opinion of the judge upon that point; but it in no respect assumed to take from the jury the right to judge for themselves upon the matter."

In Crandal v. Bradley (7 Wend. 312), it was said that " certain comments made by the court to the jury were merely intended to express an opinion upon the weight of evidence, not to take the question from the jury," and therefore no error was committed.

In Bruce v. Westervelt (2 E. D. Smith, 441), it was said : "In submitting to a jury a question of fact, a judge may add the expression of his own opinion, in relation thereto, upon the testimony, and such an exercise of his discretion forms no ground for exception."

When the Code of Criminal Procedure was adopted a new statutory provision was made bearing upon the question here involved, and in section 420 of that Code it is provided, viz: "In charging the jury the court must state to them all matters of law which it thinks necessary for

their information in giving their verdict; and must, if re-quested, in addition to what it may deem its duty to say, inform the jury that they are the exclusive judges of all questions of fact."

We think the trial judge followed the spirit of this section, and several times in the absence of any request he informed the jury "that they are the exclusive judges of all questions of fact."

In the multitude of requests that were submitted by the defendant, there was none that specifically requested the question of fact to be left to the jury, which the judge re-fused.

While some of the passages used in the body of the charge may have been hastily framed, they resulted from an immature consideration of the evidence, and do not challenge admiration as the most perspicuous and approved comments upon testimony. We must bear in mind that, in the fa-tigues and excitement of trial at issue, the most careful and approved diction is not to be expected.

We think the language used in Sindram *v.* People (88 *N. Y.* 196), when applied to the charge under consideration, warrants the court in refusing to interfere with the verdict.

It was there said, viz: "The comments of the trial court in its charge upon the testmony are not ordinarily the sub-ject of legal exception, so long as the questions of fact are left with the jury with instructions that they are the sole judges thereof."

We think the trial judge sufficiently informed the jury that they were the exclusively judges of the facts, and that it was their exclusive province to pass upon the testimony bearing upon the questions relating to the guilt or innocence of the defendant; that the body of the charge and the qualifications made in response to requests, confided the important question of fact to the jury, and followed the rule laid down in the case just cited as well as the rule laid down in section 420 of the Code of Criminal Procedure.

We are, therefore, disinclined to heed the criticisms

made upon the charge found in the pointed assault made thereon in the brief of the appellant.

Whether the defendant was guilty of the crime charged in the indictment or not, upon all the evidence produced at the trial, was a question for the jury.

We are of the opinion that the evidence was sufficient to sustain their finding. Accepting their verdict as being sustained by the evidence, we are constrained to allow it to stand, notwithstanding some passages are found in the charge which we are not inclined to commend as precedents.

Order and judgment affirmed, and proceedings remitted to the court of Oyer and Terminer of Cortland county, with instructions to proceed thereon.

FOLLETT and MARTIN, JJ., concur.

The opinion of the Court of Appeals was as follows.

GRAY, J.—The defendant was convicted of the crime of arson in the third degree, at the Cortland Oyer and Terminer, and has appealed here from the affirmance by the General Term of the judgment of conviction. The property burned consisted of a building, used as a carriage shop or factory, in the village of Cortland in this State.

The appellant's counsel has insisted upon the existence of errors in this record; some of which we shall consider, although they were discussed at the General Term. They relate to the reception of evidence and to the charge to the jury. He argues that it was error to admit in evidence certain proofs of loss, which were made for the insurance companies after the fire. They were executed by the defendant, as president of the O'Neil Wagon Company (Limited), conjointly with one Conger, as its treasurer, and were prepared after an adjustment and compromise had been made of the losses between defendant on the one side, and the representatives of the insurance companies on the other.

In order to understand the situation of matters these

proofs of loss were made and the relevancy of the proofs, a very brief review of the case will suffice.

The defendant had been engaged, in partnership with other parties, in the manufacturing and sale of wagons at Cortland, under the style of The O'Neil Wagon Company. In October, 1883, as the result of disputes between him and his associates, it was agreed by the latter to sell to ·him all of their interest in the business, subject to the payment of the debts owing by the firm; and he, at once, set about forming some new connections in some other locality. In December, 1883, he formed, with various persons, in Spring-ville, in this State, a company called The O'Neil Wagon Company (Limited), of which he became the president. By an agreement with his new associates, the stock, machinery and fixtures, etc., on hand were sold to the company at the sum of upwards of $36,000. A committee of three of the Springville directors had come over to Cortland for the purpose of taking an inventory of the property; but de-sisted, after commencing the task, on being informed by defendant that he had an inventory in his possession which had just been taken, and accepted that as the basis of a sale and purchase, but embodied in the contract of sale the pro-vision that that inventory should be subjected to a corrected count, weight and measure, on the arrival and delivery of the property at Springville. By this contract payment was to be made as follows: $20,000 in shares of the capital stock subscribed and taken by him at par value, and the balance in two notes of the company, in equal amounts, payable in six and twelve months, respectively. It also provided that the title to the property should be deemed to pass as of December 18, 1883, as also should the right to the insurance upon it. Within a few days of the making of the contract, defendant obtained and discounted the notes intended as part of the purchase-money for the property sold, and placed the proceeds to the credit of The O'Neil Wagon Company, of the property of which firm he had be-come the sole owner by the previous sale to him by his

partners.    This property, at the time of the sale to the new
company, was insured for $19,000, and additional insurance
was then effected for three months to the amount of $15,-
000.    Before the delivery of the stock had been completed,
and in the evening of February 14, 1884, the fire in ques-
tion occurred.    It broke out at about eleven o'clock in three
different places in the building, and that it was the work of
an incendiary is substantially, if not in fact, conceded.    The
loss occasioned thereby was claimed by the defendant to
amount to $20,000.    This the representatives of the in-
surance companies refused to believe or to concede, and
the claim was finally compromised by defendant at $10,000.
Then the proofs of loss in question were prepared and ex-
ecuted by defendant, as president, and one Conger, as
treasurer of the insured company.    The introduction in
evidence by the people of these proofs of loss was with
reference to their bearing upon the question of proof of de-
fendant's guilt, and we are unable to see how any error was
committed by the trial court.

The proof relied upon by the prosecution as establishing
guilt was mainly circumstantial in its nature; except that
evidence was given by witnesses as to statements made by
defendant in conversation which might be deemed equiva-
lent to admissions or confessions of guilt.    The facts elicited
by the testimony of witnesses related to the conduct of the
defendant before, during and after the fire and statements
made by him in conversation with employes, his former
partners and the insurance adjusters.    Between the time of
the sale of stock to the new company, in December, and the
time of the fire, it was testified that much of it was shipped
away by defendant.    Witness, O'Connor, a bookkeeper,
testified that on the day of the fire he went to his supper at
six o'clock, leaving the defendant alone in the building, and
before he left, defendant obtained from him a list of wagon
material and of customers' names and addresses, and of the
number of wagons they had got, and of the prices paid for
them.

During the progress of the fire the defendant stood apart, apparently indifferent, in so far as he made no effort to save any articles; while O'Connor was active and exposed himself to peril in his endeavor to save the books and peoperty. O'Connor testifies that after the fire the defendant directed him to burn the invoices, and said he was sorry that he had saved the books and that the "whole damned place didn't burn down;" that when witness called his attention to the fact that some books were gone, defendant said that was "all right;" he knew where they were, but he did "not want them to fall into the hands of the insurance men;" that defendant told him not to "mention that the books had been saved;" that when informed that the insurance men had been in the building lately, he said, "Why didn't you tell me so at the time; if you had, I could have made different arrangements, but as it is I must do the best I can;" that he told witness he had "made up an inventory to settle with the insurance company;" that he had "made up an inventory for the purpose;" that it "showed a loss of $20,000, . . . if he could get $20,000 of the insurance men he would let the Springville men go to hell, he would not go to Springville."

Witness Lansing, an employee, testified that defendant told him to tell the insurance adjusters that the second floor was filled with wagon material. Witness Baker, also an employe, testified as to the amount of stock on the premises and that there were no oils or paint or varnish in the show room; that after the fire O'Neil said if the insurance men came around and asked him how much stock there was in the building, to tell them the building was full, we didn't know how much there was in there.

When the adjusters examined the premises they found no indications of a loss of any large stock of materials. They insisted that wagon materials could not be so totally destroyed as to leave no evidence, in parts more or less indestructible. One of them, Rice, testifies that while with the defendant and others in the premises they refused to

believe defendant's statements as to the quantity of ·stock and materials and he asked him " where the iron corners for the bodies were ;" remarking if he had 777 bodies here, he would have four times as many irons. He didn't think defendant " made much of a reply. He turned red in the face."

Defendant paid a visit to the premises with his former partners Duffy and Fitzgerald, and Duffy testified that defendant then said to him, " You see, Mr. Duffy, here is no evidence of anything having been burned here—you see the floor has not been burned, nor scorched, and if the damned thing had only gone down as I intended it should, it would have been all right." Fitzgerald corroborated Duffy in his testimony, and further testified that defendant said in reference to a query as to how much of a loss he had, " from a thousand to fifteen hundred dollars would cover it all."

In giving his own evidence, the defendant admits that there was a mistake in the amount claimed in the inventory of December, on the basis of which the sale was made to the new company and that the claim he presented for property destroyed was larger than the actual loss. I have collected these items in the proofs which went to make up the case, which was submitted to the jury.

A fuller review or analysis is not called for, to the end in view ; which is to establish the materiality of evidence bearing upon the principal fact, or the question of the defendant's motive or want of motive. When the proof relied upon is circumstantial, the law requires it to be such as to satisfy the jurors, beyond any reasonable doubt, of the guilt of the defendant, and, under such a rule, it is of the essence of justice that no facts or circumstances shall be excluded from the jury which have relation to or bear upon the principal fact ; not facts which owe their origin to subsequent events ; but such as were of necessity connected with, or would have had no existence except for the principal fact. Here the principal fact was the burning of the

building, and the defendant was charged by the people with having caused it.

The proofs of loss, which he executed subsequently, were for the purpose of collecting the insurance moneys upon property which he stated was destroyed. They were required under the policies; they gave the amount of other insurance on the property—the amount of the compromise, and stated the cause of the fire in the affiant's opinion to be incendiarism. They thus were directly connected with the fire, and, the defendant being concerned with and interested in their making, they formed part of the *res gestæ*. When we speak of the *res gestæ*, we mean those surrounding circumstances which relate to and illustrate the principal fact, and are its necessary or usual incidents. The admissibility in evidence of these proofs of loss rested upon the fact of their being made necessary by the fire, and of being the formulation in a statement under oath by defendant, as an interested party, of facts concerning the fire, its consequences and probable cause. The principle of their admissibility is in their necessary connection with the principal fact. These proofs of loss, though subscribed and sworn to by defendant in his official capacity as president, none the less were the statements of the individual. Their execution jointly with Conger, the treasurer, in no wise affected the question of their admissibility, as links in the chain which the people were forging to hold the prisoner.

Though jointly subscribed, each proof of loss was in reality but the separate statement of each affiant made in that form. These proofs of loss, being in the case, would have some bearing upon the question of the existence or absence of a motive in the defendant for the commission of the crime charged. The theory of the people's case against the prisoner was that a motive did exist which led him to commit this act, and to the end of sustaining that theory and exhibiting the motive, they arrayed various facts and circumstances. He had induced The O'Neil Wagon Co., (Limited) to buy of him at a price of upwards of $36,000 a

stock of goods, etc., on his valuation of $40,000 in an inventory prepared by him, and had realized upwards of $16,-000 of the agreed price in cash long before the delivery of the goods, and there remained his liability to be covered on the stock subscription of $20,000. The contract price was subject to correction at Springville as the goods were delivered there, and it would soon be known that the amount of stock, etc., which he had sold and agreed to deliver, fell far short of his representations. The people did furnish evidence through their witnesses, and it appeared through the prisoner's own evidence that no such amount of stock was on hand as he had contracted in December, 1883, to sell and deliver.

Another question raised by the appellant is as to the correctness of the ruling of the trial judge in admitting evidence of the defendant's drinking liquor at a time subsequent to the fire.

The witness O'Connor testified to various interviews and conversations with defendant, while the adjustment of the fire losses was in progress, some of which I have already given, wherein the defendant exhibited great irritation and temper, because the books and the whole building had not been destroyed, and declared his purpose of letting the Springville men go to a hotter and undesirable place, if he could $20,000 of the insurance men. Witness was then asked to state " whether at that time and for several days previous the defendant was drinking a good deal of liquor." The objection to the question was overruled, and defendant's counsel excepted. Witness answered, "he was drinking some. He had a bottle there with him. Conger carried a bottle, and every once in a while Mr. O'Neil would take a slug." We do not think the court committed an error in the reception of the evidence. Its admission was, under the circumstances, somewhat a matter of discretion. It was a remote circumstance, but it bore upon the question of guilt in that it tended to show what were his conduct and demeanor, when engaged in matters connected with the fire

and in the course and disposition of which he was princi-
pally interested and a prominent actor. The calm or dis-
turbed demeanor, the natural or the unusual conduct of the
individual, are witnesses to the workings of the mind, and,
taken in connection with all other circumstances tending to
connect him with an event, aid the jury in forming the in-
ference of innocence or of guilt.

In Greenfield *v.* People (85 *N. Y.* 85), the demeanor
of a prisoner soon after the commission of a crime was
considered as a proper subject of consideration in deter-
mining the question of guilt. The conduct of a party may
be as much evidence as his statements. To admit evidence
of his drinking liquor was not necessary; it furnished simply
an additional circumstance, which would add to the body of
proof from which the jury might deduce the inference of
innocence or guilt. That the nature of the circumstance
was such as to create a prejudice in the jury's minds, which
might have unjustly influenced their verdict, we can no
more assume than we can that the uncalled-for profanity in
his conversation had shocked them and unduly biased their
minds.

As to the charge of the trial judge, I think, in view of
its careful analysis in the general term opinion and of their
expressions, little need be said here. If the correctness of
the verdict were to depend upon the diction, style or per-
spicuity of a charge, then I should doubt whether this ver-
dict ought to be allowed to stand; but though deficient in
these respects, it yet was intelligible, and was a summing up,
though in a discursive and inartistic way, of the proofs of
the case. There are no such errors in it as demand a rever-
sal of this judgment. The questions of fact were left with
the jury by the trial judge, who instructed them that they
were the exclusive judges as to all such questions. This
instruction was repeatedly given in different words through-
out the charge, wherever the trial judge commented upon
the facts, and also in his rulings upon the requests to charge.

Upon the whole case, we think the verdict was right, and

that it is supported by the evidence. Taking the whole body of proofs surrounding the principal fact, they point to the guilt of the defendant, and among those proofs is no item, the admission of which constituted a legal error, or which was not fairly within that strict line of investigation, which the policy of the law favors, as expedient for the discovery of the truth and for the aid of the jury in arriving at a right verdict.

The judgment and order appealed from should be affirmed.

All concur, except RUGER, Ch. J., not voting.