CHARLES JONES, Respondent, *v.* SAMUEL G. DE COURSEY, as Receiver of THE WESTERN NEW YORK AND PENNSYLVANIA RAILROAD COMPANY, Appellant.

*Contract to clear out a canal and channel — intent of the parties to the contract, how decided — charge — damages from negligence not covered by a release — nonjoinder of parties.*

A railroad corporation owning the banks and prism of the abandoned Genesee Valley canal had removed an aqueduct over Baird's creek, thus allowing the waters of the canal to discharge into that creek; but had subsequently constructed a spillway through the east bank of the canal to conduct the overflow into the State channel, which ran along the canal and then, diverging northeasterly, discharged into Baird's creek. By an agreement with one Jones, who owned lands lying between the State channel and the canal, slightly north of the spillway, the railroad company covenanted to clear out and maintain the State channel from the spillway to Baird's, and to maintain a channel in the abandoned canal from the spillway to the creek, in consideration of which Jones released the railroad company 'from all damages for the flooding of his lands by the use of the spillway in time of high water.

A flood occurred in August, 1893, which the abandoned Genesee Valley canal and the State channel had not the capacity to discharge into Baird's creek; it overflowed the channel and damaged the farm of Jones, as claimed by him, because the railroad company had failed to clear out the State channel and the canal, as it had covenanted to do.

In an action brought by Jones against the railroad company to recover such damage, the court submitted the question as to the construction of the contract to the jury as a question of fact, both parties having given testimony to show what the intention of the parties to the contract was.

*Held,* that as oral evidence had without objection been given relative to the contract to establish the intent, it was not error to submit the question of intent to the jury;

That, in any event, inasmuch as the jury had construed the contract correctly, the submission of the question as to its construction to the jury was not an error which prejudiced the defendant, and did not constitute a ground for a reversal of the judgment in favor of the plaintiff;

That, where it was shown that the condition of the State channel had not changed in the meantime, a witness might testify as to its dimensions a year and a half after the flood in question;

That the court properly refused to charge that, if the jury found that the damage to the plaintiff's land and crops was caused by extreme high water flowing from the spillway, the plaintiff could not recover — as the liability of the defendant depended upon the question of fact, whether or not the damage occasioned by the high water resulted from the defendant's failure to clear out and maintain the canal and the State channel;

That the court properly charged that, if in 1892, an employee of the defendant ploughed and cleaned out the prism of the canal, and, in attempting so to do, loosened earth so that it was washed out and deposited in Baird's creek, thus raising the bed of the creek and causing the water to flow over the prism of the canal at the spillway, the plaintiff had not released by the contract his claims for such damages.

A defendant not having taken the objection by answer cannot wait until the close of the evidence and then successfully raise the objection of the non-joinder of a party plaintiff.

MOTION by the defendant, Samuel G. De Coursey, as receiver of the Western New York and Pennsylvania Railroad Company, for a new trial on a case containing exceptions, ordered to be heard at the Appellate Division in the first instance, upon the verdict of a jury for $187.43, in favor of the plaintiff, rendered after a trial at the Livingston Circuit on the 11th day of November, 1895.

This action was begun May 11, 1894, pursuant to leave granted March 12, 1894, to recover damages to plaintiff's farm, caused by a flood in August, 1893. The farm is in the town of Leicester, in the Genesee valley, between the city of Rochester and the village of Mount Morris. The Genesee Valley canal, extending from Rochester through the valley of the Genesee river to Mount Morris, thence to the Allegany river at Olean, was constructed pursuant to chapter 257 of the Laws of 1836, and was extended from Olean to Mill Grove pond on the Allegany river, pursuant to chapter 247 of the Laws of 1857. May 25, 1863, pursuant to the statutes of

this State, the Canal Board declared the Genesee Valley canal completed. By chapter 404 of the Laws of 1877 this canal was abandoned, and by section 2 of chapter 326 of the Laws of 1880 the Commissioners of the Land Office were required to convey to a railroad corporation the banks and prism of this canal between the village of Mount Morris and the Erie canal in the city of Rochester. The act provided that the railroad corporation should "save harmless the State of New York from any loss, cost, claim or damage arising from the transfer or sale of said canal, as herein provided, and from any claim for damages arising from the construction or operation of said railroad." Subsequently a railroad was constructed by a corporation along the line of this canal, and the banks and prism were conveyed to the corporation, pursuant to chapter 326 of the Laws of 1880. In 1887 the Western New York and Pennsylvania Railroad Company was incorporated and succeeded to the rights of the first-mentioned railroad corporation. May 1, 1888, the Western New York and Pennsylvania Railroad Company and the plaintiff herein entered into a contract of which the following is a copy:

"This agreement, made this first day of May, in the year of our Lord one thousand eight hundred and eighty-eight, between the Western New York and Pennsylvania Railroad Company, a corporation duly organized and existing under the laws of the States of New York and Pennsylvania, of the first part, and Charles Jones, of Geneseo, Livingston county, N. Y., of the second part, witnesseth :

"That the parties hereto, in consideration of the mutual covenants and agreements hereinafter expressed, and the sum of one dollar by each to the other in hand paid, receipt whereof is hereby acknowledged, have agreed and do hereby agree as follows:

"*First.* The party of the first part agrees to clear out and maintain the State channel from the spillway as now built on the abandoned Genesee Valley canal, near to and adjoining the lands of the party of the second part in the town of Leicester, Livingston county, N. Y., just north of said spillway, to Baird's creek.

"*Second.* The party of the first part also agrees to keep up and maintain a channel in the bed of said abandoned canal from said spillway to Baird's creek.

"*Third.* It is mutually understood and agreed that the elevation of the top of said spillway shall be maintained at its present elevation, being the elevation agreed upon by said party of the second part and E. A. Fisher, Esq., the engineer of the party of the first part.

"*Fourth.* The party of the first part also agrees to keep and maintain on top of said spillway flashboards twelve inches high, to be removed only in case of extreme high water.

"*Fifth.* The party of the second part agrees that the party of the first part may put in, keep and maintain a spillway of the height aforesaid, and of such length as the party of the first part may deem necessary, and during times of high water may allow the water to flow freely over said spillway. The party of the second part, for himself, his heirs, executors, administrators and assigns, hereby releases the party of the first part, its successors and assigns, of and from all damages, claim for damages, cause of action and liability by reason of any flowing of the lands of the party of the second part by reason of the use as aforesaid of said spillway in times of high water, or for any claims heretofore existing.

"In witness whereof, the party of the first part has caused its corporate seal to be hereunto affixed, duly attested, and these presents to be signed by its president, and the party of the second part has hereunto set his hand and seal the day and year first above written.

> "WESTERN NEW YORK AND PENNSYLVANIA
> RAILROAD CO.      [SEAL.]
> > "By C. H. ALLEN, *President.*

"CHAS. JONES.      [SEAL.]
"Attest,
> "J. R. TRIMBLE, *Secretary.*"

April 1, 1893, the defendant was appointed the receiver of the Western New York and Pennsylvania Railroad Company.

In August, 1893, a portion of the plaintiff's farm was flooded, injuring the crops growing thereon to the extent of $187.43, as found by the jury. It is alleged in the complaint that this injury was caused by the failure of the defendant to perform the covenants contained in the 1st, 2d and 4th divisions of said contract.

*J. B. Adams*, for the plaintiff.

*John R. Strang*, for the defendant.

FOLLETT, J. :

On the trial it appeared that the principal part of the damages arose from the substantial destruction of sweet corn growing on eighteen acres of the plaintiff's farm and of wheat straw grown on six acres and stacked thereon. It appears that George B. Daley raised these crops on an agreement with the plaintiff that each was to have one-half of the price received for the sweet corn, which had been contracted to be sold, and that each was to have one-half of the straw. The court instructed the jury that, in case they found the plaintiff was entitled to a verdict, he was entitled to recover all the damages caused to his land and one-half of the damages done to the crops. It is now insisted, in behalf of the defendant, that the court should have held that the plaintiff was not entitled to recover any part of the damages done to the crops, because of the failure to join Daley as a party plaintiff. The defendant did not raise this question by his answer, nor did he raise it by a motion for a nonsuit, and it was raised only by a request to charge that the plaintiff was not entitled to recover for the damages to the crops of which he and Daley were tenants in common. The defendant not having taken this objection by his answer, has waived it. (Code Civ. Proc. §§ 488, 499.) A defendant cannot wait until the close of the evidence and then successfully raise the objection of the non-joinder of a party plaintiff.

The plaintiff's farm is west of the Genesee river, which flows northerly through the town of Leicester. The railroad is on the east bank of the abandoned canal and some distance west of the farm. In the vicinity of this farm there are, at least, three streams which rise on the highland west of the railroad and flow easterly, the waters ultimately reaching the Genesee river. The largest of these streams — Baird's creek — is of considerable size and several hundred feet north of the plaintiff's farm, and empties directly into the Genesee river. The canal was carried over this creek by an aqueduct, which was removed after the canal was abandoned, and a railroad bridge was built in its place.

Between 1838 and 1840 the State constructed a channel on the east side of the canal, which received the water carried under it by culverts and was discharged into Baird's creek. In the case this channel is designated as the "State channel" and the "State ditch." For some distance south of the place, where the spillway now is, the State channel is parallel with and just east of the east bank of the abandoned canal, but at the spillway it diverges easterly, extending through the lands of George B. Daley, then diverges northerly and extends through the farm of the plaintiff and the farm of another person and discharges into Baird's creek.

Since the removal of the aqueduct over Baird's creek the waters from the western watershed and some of the smaller streams have been permitted to flow directly into the prism of the old canal, and, running northerly, have discharged into Baird's creek at the place where the aqueduct stood. After the railroad was built, and before contracting with the plaintiff, it constructed a spillway through the east bank of the abandoned canal and under its track, so that when the prism of the canal was filled with water as high as the top of the spillway it would flow over the spillway into the State channel, and through it to Baird's creek. Thus there were two channels by which the waters from the highland west of the railroad were carried into Baird's creek, protecting the farms lying east of the railroad from damages by floods. By the construction of the spillway a larger quantity of water was discharged into the State channel than before, more than it was capable of containing, and resulted in damaging the plaintiff's farm. Such was the situation before the contract was entered into, and, by reason of these conditions, the contract was made.

The plaintiff asserts that defendant failed to clear out and maintain the State channel between the spillway and Baird's creek, and neglected to maintain a channel in the prism of the abandoned canal from the spillway to Baird's creek; and that, by reason thereof, the flood in August, 1893, instead of being discharged through the prism of the canal and through the State channel into Baird's creek, overflowed the channel and flooded the plaintiff's farm. The defendant insisted that the plaintiff's farm was flooded by the high water of the Genesee river and of Baird's creek, which backed

water into the channel and caused it to overflow. Considerable evidence was given showing the fall in the prism of the canal between the spillway and Baird's creek, and the fall between the spillway and Baird's creek by way of the State channel. The plaintiff gave evidence showing that the prism of the canal and the State channel had become partially filled with silt, which greatly diminished the capacity of both. Under the 1st clause of the contract the defendant was bound to clear out and maintain the State channel from the spillway to Baird's creek so that it should have its original capacity. By the 2d clause of the contract the defendant was bound to maintain a channel in the prism of the abandoned canal from the spillway to Baird's creek of its original capacity. Had the railroad performed the obligations imposed upon it by the first four clauses of the contract it would be exempted by the 5th clause from liability for damages occasioned by high water. Whether the defendant had performed its covenants was a question of fact for the jury, and so was the question whether the failure, if failure there was, was the proximate cause of flooding the plaintiff's farm.

The rights of the litigants being dependent upon the determination of these issues of fact, it was not error for the court to deny the defendant's motion to nonsuit.

The defendant insists that errors were committed in the reception of testimony.

In April, 1895, a survey of the prism of the canal and of the State channel was made by an engineer, who was called as a witness by the plaintiff and permitted to testify, against the objection of the defendant, that the bottom of the canal and the bottom of the channel were about six feet wide. It was objected that it was incompetent to allow the plaintiff to show the capacity of the canal and of the State channel a year and a half after the flood. The answer to this is that the next witness called by the plaintiff testified that he had lived near and had been acquainted with the canal and channel since 1873, and that their conditions in August, 1893, were the same as when the engineer made the survey. There was no evidence that the conditions of the canal and channel had changed between August, 1893, and April, 1895. The reception of this evidence was not error.

The plaintiff testified that he had been acquainted with the canal since it was built and with the channel since it was built in 1838 and 1840, and was allowed to testify, over the defendant's objection, that the channel was between twenty and twenty-four feet wide on the bottom and between twenty-four and thirty feet wide at the top ; that it averaged four to six feet in depth ; and that in 1868 it was cleaned out by the State from the point where the spillway now is to Baird's creek, so that its capacity was about the same as it was when constructed. Under the 1st clause in the contract the defendant was bound to clear out and maintain the State channel from the spillway to Baird's creek so that it should have the capacity which it had when maintained by the State, and it was not error to permit the plaintiff to testify to its capacity while maintained by the State. A like question is presented by an exception at folio 199, and is subject to the same principle controlling the exception at folio 128 and last discussed.

The plaintiff was allowed to show the value of the straw destroyed. The defendant objected that the evidence was incompetent because the straw was owned by the plaintiff and Daley as tenants in common. This objection was overruled. The defendant not having raised the objection by answer of the non-joinder of Daley, and the court holding that the plaintiff could recover for only one-half of the value of the crops, the defendant was not injured by this ruling.

The foregoing exceptions to the admission of evidence are the only ones relied on by the defendant as grounds for a new trial. The exceptions to the charge remain to be considered.

The court submitted the construction of the contract to the jury as a question of fact. To this the defendant excepted, and the ruling of the court is urged as a ground for a new trial. The contract was negotiated on the part of the railroad by Edwin A. Fisher, its engineer, who was called as a witness for the defendant, and permitted, without objection, to give the conversations with the plaintiff preceding the execution of the contract and to describe the conditions which existed before the contract was made, and to state why it was entered into. After the defendant rested, the plaintiff was recalled and testified in his own behalf as to the conditions existing when the contract was made and previous thereto, and as to what was

said between him and Fisher while settling the terms of the contract. This evidence was admitted without objection. Each side having given testimony to show the intent of the parties, it was not error to submit their intent as a question of fact to the jury. For another reason the submission of the question was not error. The construction of the contract, had no oral evidence been given bearing on it, was a question of law for the court, but its construction having been submitted to the jury and by it rightly construed, the submission is not an error which prejudiced the defendant, and is not a ground for reversing the judgment. (*People* v. *O'Neil*, 49 Hun, 422; affd., *sub nom. People* v. *O'Neill*, 112 N. Y. 355; *Ming* v. *Corbin*, 68 Hun, 161; affd., 142 N. Y. 334; *Whitney* v. *McLean*, 4 App. Div. 449.)

In *Brady* v. *Cassidy* (104 N. Y. 147) the jury erroneously construed the contract, which was an error of law and of the same effect as though it had been erroneously construed by the court; and for this reason the judgment was reversed.

The defendant requested the court to charge that, if the jury found the damage to plaintiff's land and crops was caused by extreme high water flowing from the spillway, the plaintiff could not recover; which was refused, and the defendant excepted. Whether the defendant was liable depended upon the question whether the damage occasioned by the high water resulted from the defendant's failure to clean out and maintain the prism of the canal and the State channel, as it had covenanted to do; and it was not error for the court to refuse to charge, as a matter of law, that the plaintiff could not recover for damages caused by extreme high water. The covenants to be performed by the railroad were executory, and if, by its failure or by the failure of its receiver to perform those covenants, the plaintiff was damaged, the defendant was liable. In 1892, Austin W. Wheelock, under the employment of the railroad, plowed and cleared out the prism of the canal, and the court charged that if, in attempting to clear it out, the loosened earth was left so that it was washed into and deposited in Baird's creek, thus raising the bed of the creek and causing the water to flow over the prism of the canal at the spillway, the plaintiff had not released, by the contract, his claims for such damages. To this the defendant excepted. There certainly was no error in this instruction. If the damages

were caused by the non-performance, or by the negligent perform-
ance, by the defendant of its covenants, the contract was not a bar
to the recovery of damages by the plaintiff.

All the instructions and refusals to instruct the jury to which the
defendant excepted have been referred to, but no error is found
calling for a new trial.

The defendant's motion for a new trial is denied and a judgment
ordered on the verdict for the plaintiff, with costs.

All concurred.

Motion for a new trial denied and judgment ordered on the ver-
dict for the plaintiff, with costs.