JOHN H. MING and CHARLES K. WELLS, Respondents, v. AUSTIN CORBIN, Appellant.

*Original entire contract, severed after part performance — defense — counterclaim — construction of writings.*

When an entire contract for the sale of two commodities has been severed, by agreement, after the delivery of one of the commodities, the failure to deliver the other is not a defense to an action brought to recover the price of the commodity delivered, although the damages arising from such failure, if properly set up, proved and assessed, might have constituted a counterclaim.

When the construction and legal effect of writings, properly questions of law for the court, have been submitted to the jury and rightly decided, the fact that they were determined by the jury instead of by the court does not constitute an error for which a judgment will be reversed.

APPEAL by the defendant, Austin Corbin, from a judgment of the Supreme Court, entered in the office of the clerk of the city and county of New York on the 23d day of November, 1892, in favor of the plaintiffs, on a verdict rendered at the New York Circuit, and from an order entered in said clerk's office on the 7th day of December, 1892, denying the defendant's motion for a new trial made upon the minutes.

This action was brought to recover the balance due on the purchase price of certain bonds of the par value of $5,300, issued by the county of Lewis and Clark, in the Territory of Montana, and sold in 1872 by the plaintiffs to the defendant at about eighty-two per cent.

In March, 1872, one Sherwood was authorized by the plaintiffs to sell for them $5,000 of the bonds of the county of Lewis and Clark, and $5,000 of Territorial warrants at eighty-five per cent, and he did sell $5,000 of each kind at that rate to the defendant.

Sherwood's authority and connection with the affair are disclosed by the letters of March 6 and 20, 1872, and the three telegrams of March nineteenth and twentieth, same year.

"OFFICE OF AUSTIN CORBIN,  
170 BROADWAY,  NEW YORK, *March* 6, 1872.

" JNO. H. MING, Esq., *Helena, Mont. Terr.:*

" DEAR SIR — I have an opportunity to place a limited quantity of county bonds or scrip drawing interest, and also Territorial scrip.

Could use five thousand, face of Co. warrants, at 85 cts., and same amt. Territorial at 85 cts. Now don't get alarmed for this is no corner but simply through friendship. I am enabled to place above amts. at price and if you have same or portion and wish to dispose of them you can send them to me and I will handle them for you, guarantee money.

"J. K. O. SHERWOOD."

"HELENA, *Montana*, 19, 1872.

"JAS. K. O. SHERWOOD, Care Austin Corbin, 170 *Broadway*,
    *N. Y. City:*

"Will sell five each bonds and territorial warrants, at eighty-five for face and interest, and give you two hundred. If wanted, telegraph.

"J. H. MING & CO."

"From NEW YORK, dated 20 *March*, 1872.

"To J. H. MING & Co.:

"Send them, draw on me, ten days.

"J. K. O. SHERWOOD."

"From NEW YORK, dated *March* 20, '72.

"To J. H. MING & Co.:

"Send bonds cannot use warrants unless to be bonded in June.

"J. K. O. SHERWOOD."

"HELENA, MONTANA, *March* 20, 1872.

"J. K. O. SHERWOOD, Care Austin Corbin, *New York:*

"Your two telegrams of the 20th are at hand. We will ship $5,000 in bonds to-morrow night as we were unable to get them ready for to-night's coach. All territorial warrants issued prior to December 1st, 1871 (under which head ours come), are to be bonded in June at 12 per cent interest, but from the tenor of your second dispatch we think you understand this fact, and are not certain whether ours are of the description or not. But as we are not certain about it, we will not ship till we hear further from you. As a matter of course we cannot allow you more than $100 for sale of bonds alone. In case you want the warrants you must let us know. The bonds will reach you the day after this letter comes to hand.

"Very truly yours,

"J. H. MING & CO."

The foregoing correspondence was all between the plaintiffs and Sherwood, who acted for both litigants. After the date of the last letter Sherwood left the city of New York, and the subsequent correspondence was between the principals. At the time of this correspondence the usual time for the transmission of letters between New York and Helena was about ten days. When the letter of March twentieth was received at New York does not appear, but probably about April first. April 9, 1872, the defendant sent the following telegram to the plaintiffs :

"NEW YORK, *April 9th,* 1872.

"J. H. MING & Co., *Helena, Montana :*

"Send the five thousand Territorial warrants. County Bonds not yet arrived. Sherwood gone.

"A. CORBIN."

"WHITE RIVER JUNCTION, VT., *April 13th,* 1872.

"Messrs. J. H. MING & Co., *Helena, Monta. :*

"GENTLEMEN — About six weeks ago I negotiated through Mr. J. K. O. Sherwood for $5,000 Lewis & Clark Co. Bonds and a like amt. of territorial warrants at 85 on prin. and accrued interest. I understood that the L. & C. were such as I had had before, 15 per cent. Never knew there were any other. Had no notion they were 12 per cent. and I do not think Sherwood had. On Wednesday last just as I was leaving New York for New England on business the $4,300 came from you, and a day or two before $1,000 from Phila. (without any advice as to what they were), making together $5,300. I was astonished to find that they were 12 per cent and at first thought I would hold subject to your order and write you. Of course they were not so good into fully $7\frac{1}{2}$ per cent as what I supposed I had purchased, and I doubted if I could sell them at all to cover cost. On reflection, however, and fearing that a delay might work some inconvenience to you, I determined to place them if possible and at best rates without loss, hold funds subject to your order, and trust you to make the thing satisfactory when the ' situation' should be fully understood. Acting upon that, I have sold them, and placed to your credit $4,400 which is subject to your check on me at sight, and I have directed my cashier to

send you a check book as you requested. The balance of $41.77 I let remain open until I hear from you.

"In regard to the interest I don't think you can demand it after the trade was made. It was not my fault (nor yours) that the bonds were not delivered, but my advantage. If you can fairly ask interest of me, then I must hold my money idle in N. Y. waiting for them, and you get interest on it, really, I have never paid it, nor had it charged on any bonds coming from there heretofore, and don't believe I should pay anything after the purchase was concluded by telegraph. If fairly chargeable, then I should, and will. We will settle that satisfactorily. As to the adjustment of this matter generally, as to the misunderstanding, I shall leave it pretty much to you. You can see plainly enough that the bonds are worth fully $350 less than I expected, and I have finally sold them for only enough to let me out about even, and when I might as well have placed other securities paying me at least that much profit. I do not know that it is anybody's fault that the thing was not better understood. Sherwood, I knew did not speak of there being 12 per cent and probably did not know it. I did not, and you probably supposed we both did. I had never heard that any Co. Bonds there drew 12 per cent. It seems to be a very 'wide misunderstanding.' Without anybody being particularly to blame, and under all the circumstances, I am willing to do my part to harmonize, so that no one will be very much the loser and all be content and to this end I will say that if you will discount $100 from the amount as you state it (including the doubtful item of interest, $36.77):

Say .......................................... $4,441.77
Less .......................................... 100.00

Making net.................................... $4,341 77

and call the bonds very well sold at that, as I know they are, I will be satisfied, and try to make up the deficiency on something else.

"I would not give one cent over 80 for another lot of the same kind. Let me know if I am not, under all the circumstances, pretty reasonable.                                         Yours truly,
                                                          " A. CORBIN.

"I received your letter as to territorial warrants, and ordered them forwarded (by telegram) some days ago."

The Wednesday preceding April thirteenth was the tenth, on which date the defendant received $4,300 of the bonds of the county of Lewis and Clark, and a day or two before that, $1,000 of like bonds, as will be seen by the foregoing letter, by which it also appears that there was a misunderstanding between the contracting parties as to the rate of interest borne by the county bonds. To adjust the matter, the defendant offered to credit plaintiffs with $4,341.77. In the usual course of mail this letter reached the plaintiffs about April twenty-third, who, on the twenty-ninth of the same month, accepted the terms offered by the defendant in his letter of the thirteenth. The following is a copy of the plaintiff's letter:

"*April 29th*, 1872.

"MR. AUSTIN CORBIN, *New York City:*

"Your favor of April 13th, notifying us of receipt of bonds is at hand. They were a long time on the road and we were quite anxious concerning them. The misunderstanding as to the kind of bonds we offered for sale we regret, and we certainly supposed Mr. Sherwood and yourself were posted as to the new issue of bonds, 12s, in accordance with a law of the Legislature of '71, which forbids the issue of any bonds hereafter at a greater interest than twelve (12) per cent.

"Your letter states that you think that $4,341.77 which brings the bonds down to a net figure of about 81½c., would be fair for all concerned. In view of the fact that Sherwood's telegram stopped the shipment of territorial warrants, a portion of which you could have used (as it afterward seemed) to good advantage, and that the transaction was conducted by you without any profit, we accept the change."

"NEW YORK, *April 22d*, 1872.

"J. H. MING & Co., *Helena, Montana:*

"I have sold the territorial warrants and must insist upon delivery.

"A. CORBIN."

"THE CORBIN BANKING COMPANY, ⎫
       115 BROADWAY,       ⎬ NEW YORK, *April 23d*, 1872.
                          ⎭

"Messrs. J. H. MING & Co., *Helena, Montana:*

"GENTLEMEN — I was a good deal surprised to get your letter of 10th inst. yesterday, and I immediately telegraphed you that as I

had contracted the sale of the territorial warrants, I must insist upon having them.

"I purchased the bonds and warrants from Mr. Sherwood, who acted under your telegram. The bonds were understood to be 15 per cent. and the warrants such as would be fundable into the new bonds. After Sherwood left the office, and not knowing where to reach him, I dispatched you that the bonds must be fundable warrants to meet the contract. Sherwood said they were, but I wanted to be sure on that point, and telegraphed you at my expense. You then wrote that they were fundable, but you did not send them along as you should have done. On receipt of your letter I telegraphed you to send.

"I took the 12 per cent bonds and made no words about it, notwithstanding, I expected to have and purchased 15 per cent bonds. I was bound to take the warrants under the contract with Mr. Sherwood, and I cannot see why you are not bound to deliver them, and I cannot consent that it should be otherwise.

"Yours truly,

"A. CORBIN."

"THE CORBIN BANKING COMPANY, )

    115 BROADWAY,     ) NEW YORK, *May* 11, 1872.

"Messrs. J. H. MING & Co., *Helena, Mon.:*

"DEAR SIRS — A draft covering your balance was presented yesterday which I decline to pay. I presume you understand the reason, but that you may not misunderstand it, I write this to say that I consider my purchase of bonds and warrants one, and that I am entitled to the delivery of both, and do not now propose to pay for either until I get both.

"I have examined all the dispatches and your letter, and I am at a loss to conceive on what grounds you can decline to deliver the warrants.

"Yours truly,

"A. CORBIN."

"THE CORBIN BANKING COMPANY, )

    115 BROADWAY.     ) NEW YORK, *May* 13*th*, 1872.

"J. H. MING & Co., *Helena, Mon.:*

"DEAR SIRS — I have yours of the 29th ulto. I wrote you in relation to the warrants on Saturday. I regret exceedingly that we

should have any difficulty with regard to these warrants, but I cannot possibly see why you should decline to deliver them.

"You say that Sherwood's telegram stopped the shipment of the warrants, a portion of which I could have used to advantage. Let me repeat I bought through Sherwood $5,000 fundable warrants, believing that they were fundable. On the receipt of a letter from the Territorial Treasurer soon after I learned that only a portion was fundable. Sherwood not being here, I telegraphed you not to send unless they were fundable. It is not possible, it seems to me, that you could have been mistaken — indeed I have your letter now in my hand of the date the 20th of March, to Mr. Sherwood, in which you say 'that all Territorial warrants issued prior to Dec. 1st, 1871 (under which head ours come) are to be bonded in June at 12 interest, but from the tenor of your 2nd dispatch we think you understood this fact and are not certain ours are of this description or not, but as we are not certain about it, we will not ship until we hear further from you.'

"I bought fundable warrants. In that letter you expressly state yours are of that character. My dispatch to you not to ship anything but fundable warrants must be construed by any reasonable man that fundable warrants were what I bought. I wish to do exactly right in this matter, and not require anything wrong, but having bought the warrants fairly and contracted for their sale when reduced to bonds, I consider myself entitled to have them.

"Yours truly,

"A. CORBIN.

"If your draft had been for $3,000 or $3,500 it would have been paid, but I decline to pay for the bonds in full till I get the warrant."

The defendant credited the plaintiffs with $4,341.77, the price of the bonds as agreed on in the letters of April thirteenth and twenty-ninth, and June seventeenth paid $3,500 on account. This action was brought to recover the balance, $841.77, for which, with interest, the plaintiffs had a verdict.

*William J. Kelly*, for the appellant.

*Charles N. Morgan*, for the respondents.

FOLLETT, J. :

Sherwood testified, and in this he was not contradicted, that the plaintiffs authorized him to sell bonds issued by the county of Lewis and Clark, of the face value of $5,000, and warrants issued by the then Territory of Montana of the face value of $5,000, at eighty-five per centum, and that he did agree for the plaintiffs to sell and thereafter deliver to the defendant such securities for $8,500. This was an entire contract, and unless modified, the plaintiffs, not having performed it, were not entitled to recover. All negotiations subsequent to the original contract were in writing, and their construction and legal effect were questions of law for the court, but those questions having been submitted to the jury and rightly decided, the fact that they were determined by the jury instead of by the court is not an errror for which the judgment will be reversed. (*Thompson* v. *Roberts*, 24 How. U. S. 233–240 ; *Miller* v. *Eagle Life & Health Ins. Co.*, 2 E. D. Smith, 268 ; *Cumpston* v. *McNair*, 1 Wend. 457–463 ; *Pangburn* v. *Bull*, Id. 345–352 ; *Hall* v. *Suydam*, 6 Barb. 83–88 ; *People* v. *O'Neil*, 49 Hun, 423 ; affd., 112 N. Y. 355 ; 1 Thomp. on Trials, § 1020.)

We think the correspondence not only warrants but compels the conclusion that there was at least a severance of the original contract. By that contract the plaintiffs agreed to sell, and the defendant to purchase, bonds of the county of Lewis and Clark, of the face value of $5,000, for eighty-five per cent. Subsequently, the plaintiffs delivered bonds issued by that county, of the face value of $5,300, for which the defendant refused to pay eighty-five per centum, because they bore interest at the rate of twelve instead of fifteen per cent. However, the defendant by his letter of April thirteenth, agreed to pay $4,341.77, which was less than eighty-two per cent, which proposition the plaintiffs accepted by their letter of April twenty-ninth. The defendant wrote to plaintiffs in the letter of April thirteenth, that $4,400 of the price agreed on was placed to their credit, and subject to their check at sight. May 10, 1872, the defendant refused a draft for the full amount agreed to be paid for the bonds, and in explanation said, in a postscript to his letter of May thirteenth, that if the plaintiffs had drawn for $3,000 or $3,500 it would have been paid, but that he would not pay for the bonds in full until the warrants were received. June seventeenth the defendant

paid the plaintiffs' draft drawn for $3,500 against the price of the bonds. This is quite inconsistent with the position taken on the trial that the original contract had not been severed, and that the failure to deliver the Territorial warrants was a defense to a recovery of the purchase price of the bonds. It seems to us that the only debatable question, arising out of the correspondence and transaction, is whether that part of the contract relating to the warrants was abandoned or rescinded. The decision of this question, depending as it did upon the construction of writings, was a question of law for the court, but which the court was not asked to determine. The defendant by his answer did not set up the failure to deliver the Territorial warrants as a defense to the plaintiff's cause of action, but as a counterclaim, and had the case been tried upon this theory, it may be that damages would have been allowed him. But on the trial, the defendant by his counsel insisted that the failure to deliver the Territorial warrants was a defense to the action, and asked that a verdict be directed for the defendant, and also that the complaint be dismissed. The court was not asked to rule that if the original contract had been severed, the plaintiffs were still liable in damages for their nonperformance of that part relating to the Territorial warrants, which should be set off against the price agreed to be paid for the bonds. Neither was the court asked to instruct the jury to assess the damages sustained by the defendant by the nondelivery of the warrants, and set off the amount against the demand of the plaintiffs. The defendant insisted that if damages were sustained by him they amounted to a defense instead of a counterclaim, and so he insists on this appeal, and we see no way of affording the relief which we might have been able to give, had the case been tried upon the theory of the answer, and damages denied him.

The judgment should be affirmed, with costs.

VAN BRUNT, P. J., and O'BRIEN, J., concurred.

Judgment affirmed, with costs.