MILTON M. NORTHRUP and SEYMOUR D. LATCHER, Respondents, v. GEORGE S. PORTER, Appellant.

*Fire insurance — warranty that the division walls of an apartment house are without openings — where there is no ambiguity, the court must construe written instruments — the submission of a case upon an erroneous theory warrants a new trial although no exception be taken.*

Prior to the issuance of a policy of fire insurance under the Lloyds system, upon five brick buildings, which together constituted an apartment house, the insured, in response to inquiries of the attorneys in fact for the underwriters, as to whether " the division walls will extend to the roofs of your houses without openings in every house or every other house," replied, " The division walls run through to the roof in every other house. * * * We have five distinct houses," and inclosed a sketch which did not show the existence of openings through the division walls which in fact existed in the basement of each building.

The policy provided that it was understood between the parties " that entire division walls extend to roofs between each of the above-described buildings," and that the policy should be void if the insured had concealed or misrepresented any material fact or circumstances concerning the insurance or the subject thereof.

Upon the trial of an action brought against one of the underwriters upon the policy, an issue was raised as to whether the underwriter, who was also one of the attorneys in fact for all the underwriters, had been in the building during its erection or after its completion, which question the court submitted to the jury, together with the question as to the proper construction of the letters and sketch and of the policy itself, and the jury found for the plaintiffs.

*Held*, that the action of the court was erroneous;

That the documents in question were not ambiguous, and that it was the duty of the court to give them construction;

That it should have been held that the completed building did not correspond
with the description in the policy, letters and sketch; that the misdescription
was material to the risk, and that the plaintiffs were not entitled to recover
unless the jury found that the defendant became an underwriter on the policy
with knowledge of the manner in which the apartment house was constructed;

That as the case was submitted to the jury upon a theory which was wholly
erroneous, a new trial must be granted, although no exception was taken to
the submission;

That the rule that, in case the construction of a written contract be left to the
jury, and it appears that the jury correctly construed it, the error does not
require the reversal of a judgment entered on such a verdict, did not apply,
as it was impossible in this case to know how the jury construed the contract.

APPEAL by the defendant, George S. Porter, from a judgment of
the Supreme Court in favor of the plaintiffs for $902.27 damages
and costs, entered in the office of the clerk of the county of Oneida
on the 23d day of October, 1896, upon the verdict of a jury, and
also from an order entered in said clerk's office on the 30th day of
October, 1896, denying the defendant's motion for a new trial made
upon the minutes.

*John D. Kernan* and *William P. Quin*, for the appellant.

*Thomas S. Jones*, for the respondents.

FOLLETT, J. :

This action was begun August 10, 1896, to recover on a Columbia
Fire Lloyds policy of insurance which was executed by twenty-five
underwriters, through Porter & Armstrong, their attorneys, by
which they insured the plaintiffs under the firm name of Northrup &
Latcher on each of five brick buildings situate on the easterly side
of Genesee street in the city of Utica, which are described in the
policy as follows :

" $4,000.  On the brick building situated on the easterly side of Gene-
see street and 100 feet northerly from Clinton Place
located on lot No. 371 Genesee street, Utica, N. Y.

" $4,000.  On the brick building adjoining above-described building
and located on lot No. 371 Genesee street.

" $4,000.  On the brick building adjoining last-mentioned building
and located on lots Nos. 369 and 371 Genesee street.

"$4,000. On the brick building adjoining last-mentioned building and located on lot No. 369 Genesee street.

"$4,000. On the brick building adjoining last-mentioned building and located on lot No. 369 Genesee street, Utica, N. Y."

The only provisions of the policy which are germane to this litigation are the following:

It is understood that entire division walls extend to roofs between each of the above-described buildings."

This entire policy "shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstances concerning this insurance or the subject thereof."

The policy was issued April 4, 1894, and was to continue in force until April 4, 1897, and provides that each underwriter shall be liable for $800, but contains no provision that an action must be first brought against the attorneys of the underwriters, and no question is raised over the form of the action.

October 1, 1894, a New York standard mortgagee provision was attached to the policy, providing that the loss on the buildings, if any, should be paid to Devillo W. Northrup as mortgagee. After the fire the mortgagee assigned all his interest under the policy to the plaintiffs.

May 15, 1895, the policy was modified by the agreement of the parties so that $2,000 was insured on each of the five brick buildings and $2,000 on the personal property in each of said buildings, making an aggregate of $20,000 in all.

In the modification the buildings were described as in the original policy with slight and immaterial variations.

About six o'clock on the morning of March 3, 1896, the property insured was totally destroyed by fire, which fact was conceded on the trial, and it was also conceded that the notice of the fire was given, that due proofs of loss were served on the insurers, and that the plaintiffs, if entitled to recover, were entitled to recover $818, which was the amount of the verdict. The affirmative was given to the defendant on the trial of the action.

The property insured is known in this litigation as the Genesee Apartment House and as the Genesee Flats. It was seven stories

high above the basement or cellar and roofed with tin. It was ninety-one feet deep from east to west, but its length north and south is not disclosed. It was built in 1891. The Genesee was divided into five buildings, each having two sets of apartments on each floor, fourteen in each building, seventy in all.

There were four interior stone walls extending from the front of the building twenty-six feet towards the rear, in each of which there was an opening three feet wide and seven feet high, presumably for doors, but whether such openings were actually closed by doors does not appear. At the east end of these walls, stone lateral walls about five feet long, standing at right angles with the first-mentioned walls, were built. From the ends of these lateral walls stone walls were extended sixty-five feet to the rear of the building. Between these stone walls were spaces five feet wide and sixty-five feet long filled with earth. Solid brick walls without openings were built on the stone walls twenty-six feet in length, extending from the front of the building twenty-six feet towards the rear and carried to the roof. At the east ends of these brick walls were lateral brick walls about five feet in length, built on the four stone lateral walls. From the ends of these lateral brick walls there were brick walls sixty-five feet in length standing on the stone walls and extending to the rear of the building, leaving four open spaces five feet in width and sixty-five feet in length between the buildings, which spaces are called in this litigation "courts." In the brick walls forming the courts there were windows opening from the apartments into the courts for the admission of light and air. The first and second floors in each building were reached by stairways, and the floors above the second were reached by means of an elevator located in the center building. On the third floor and on all floors above it there was a hall at the rear of the building three and one-half feet wide, extending through and connecting all the buildings, being carried over the courts on bridges. By these halls free communication was had on all the floors above the second between all the buildings. There is no dispute about the manner in which the buildings were constructed, united and used

The defense to this action is based wholly on the ground that during the negotiations for the policy it was represented by the plaintiffs that the four division walls were entire walls, extending

from the cellar to the roof, without openings, and that the buildings were so described in the policy, and that the policy did not cover five buildings connected by openings in the basement, by halls on all floors above the second, and having windows on all the floors opening into the courts.

The defendant is an insurance broker as well as an underwriter, having his office in the city of New York. He carried on this business with one Plyer, under the firm name of Porter & Plyer, until some time in 1893, when Plyer went out of the firm, and was succeeded by A. J. Armstrong, and the business of insurance brokers was thereafter carried on under the firm name of Porter & Armstrong at the city of New York. The defendant, to add force to the description of the buildings in the policy and to the provisions above quoted from the policy, introduced in evidence the letters which led to issuing the policy.

October 26, 1891, Porter & Plyer wrote the plaintiffs: "Have the brick division walls been carried up for each house without openings between the houses in these walls, or are the walls entire for every other house?"

This letter was not answered. December 14, 1891, Porter & Plyer wrote the plaintiffs: "The best we can do is 22½ cts., for 3 years, with separate insurance or amounts on each compartment between these brick walls which run to the roofs. If two buildings are to go there between these walls, then two will go for one amount."

January 4, 1892, the plaintiffs wrote Porter & Plyer: "We will have to accept your offer of 22½c., for three years, on our Genesee St. property."

January 7, 1892, Porter & Plyer wrote the plaintiffs: "Please let let us know whether the division walls will extend to the roofs of your houses, without openings in every house or every other house. As we wrote to you on the 23rd Decr., the policies must attach in each house, or each of two houses, as per division walls."

January 9, 1892, the plaintiffs answered Porter & Plyer's letter of January seventh, saying: "Replying to your favor of Jan. 7, we beg to hand you the enclosed sketch of our building. The division walls run through to the roof in every other house, or, in other words, there are two apartments on each floor of each house.

We have five distinct houses; they are situated on lots 369 and 371 Genesee St.; the five, the nearest building to ours, is 80 ft. to one side."

The "sketch" inclosed did not show the openings through the stone walls in the basement, nor the construction of the brick walls forming the courts, nor did it show that the five buildings forming the Genesee were connected by halls on all the floors above the second.

April 4, 1894, the policy was issued. Whether there was any correspondence from January 9, 1892, to the date of the policy, does not appear, but it appears that between these dates various policies were issued by or through Porter & Armstrong covering the Genesee, some of which were canceled, and at last the policy in suit was issued.

For the purpose of destroying the effect of the description of the property in the policy, and the provisions therein above quoted, and the representations contained in the letters and sketch, Seymour D. Latcher, one of the plaintiffs, testified that, in 1891, when the Genesee was in process of construction, and after the stone walls had been built and the brick walls started, the defendant visited the premises; that in each of the interior stone walls there was then an opening three feet wide by seven feet high; that he showed the defendant the plans of the building, and explained to him that the brick division walls from the front and extending twenty-six feet towards the rear were to be solid, and that from the ends of the four solid brick walls, twenty-six feet in length, court brick walls were constructed with windows in them. At that time nothing was said about the openings above the second floor for the rear hall, though the openings were there, but the bridges were not constructed. This witness also testified that, in 1892, the defendant called at his office in the Genesee, at which time the building was finished, and was shown through the building from top to bottom, and that he saw the halls. He also testified that the defendant had been in the building a number of times besides on the two occasions specified, the dates of which he could not fix. Mr. Stearns testified that, between April 1 and June 1, 1892, he saw Mr. Latcher and the defendant in the building, and was introduced to the defendant by Mr. Latcher. Mr. Northrup, one of the plaintiffs, testified that

he saw the defendant in the Genesee in the spring of 1891. Three other witnesses were sworn, giving testimony not very precise and definite, but tending to corroborate the testimony of the three witnesses who testified that the defendant visited the building. On the contrary, the defendant testified that he was not in the Genesee while it was being erected nor after it was completed. This conflicting testimony raised a question of fact for the jury.

The construction of the letters, sketch and policy was for the court, and it should have discharged that duty and not imposed it upon the jury. It should have been held that the completed building did not correspond with the description in the policy, letters and sketch; that the misdescription was material to the risk, and that the plaintiffs were not entitled to recover unless the jury found that the defendant became an underwriter on the policy with knowledge of the manner in which the Genesee was constructed. Here was a plain and simple issue of fact, which should have been submitted to the jury without being embarrassed by a direction that the jury should determine how the parties understood the documents. The documents are not ambiguous and present no question of fact for the jury.

It is true, in case the construction of a written contract is left to the jury and it appears that the jury correctly construed it, the error does not require the reversal of a judgment entered on such a verdict. (*Ming* v. *Corbin*, 68 Hun, 161; affd., 142 N. Y. 334, and cases cited; *Jones* v. *De Coursey*, 12 App. Div. 164.) But in this case it is impossible to know how the jury construed the documents. The presumption arising from a general verdict is that the jury found all questions of fact submitted to it in favor of the party for whom the verdict is rendered. It may be that the jury in fact found that the defendant never visited the Genesee, but that, under their construction of the documents, the plaintiffs were entitled to recover. The court was in effect requested to charge that the buildings as constructed did not correspond with the description in the documents, and that the misdescription was material to the risk. This was not charged in a way which took the question from the jury.

When a case is submitted to the jury upon a theory which is wholly erroneous, it is the duty of this court to grant a new trial, although no exception was taken to the submission. (*Standard Oil*

*Co.* v. *Amazon Ins. Co.*, 79 N. Y. 506; *Whittaker* v. *D. & H. Canal Co.*, 49 Hun, 400; *Leach* v. *Williams*, 12 App. Div. 173.)

The judgment and order should be reversed and a new trial granted, with costs to abide the event.

All concurred.

Judgment and order reversed and a new trial ordered, with costs to abide the event.