(115 App. Div. 196)

CRANE et al. v. BARRON.

(Supreme Court, Appellate Division, First Department. November 5, 1906.)

1. SALES—CONTRACTS BY CORRESPONDENCE.
Plaintiff wrote to defendant, ordering lumber described for a price named. Defendant replied by acknowledging plaintiff's order, and stated that he had sent the order to the mill with instructions to commence cutting at once, and that the lumber would be shipped via a certain railroad, unless plaintiff preferred a different delivery. *Held* to constitute a valid contract of sale, binding defendant to furnish the lumber within a reasonable time.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 44–48.]

2. SAME—BREACH OF CONTRACT—WAIVER.
A contract bound defendant to furnish plaintiff certain lumber within a reasonable time. Defendant failed to comply with the contract, and

wrote to plaintiff advising him of his inability to comply with the contract, and suggesting that plaintiff protect himself by buying lumber from others. Plaintiff replied by stating that he had been depending on defendant, and would ask him to use every exertion possible to furnish the lumber at an early date. *Held,* that plaintiff waived the breach, and could not maintain an action therefor.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, §§ 458, 1150–1155.]

3. SAME—RESCISSION OF CONTRACT BY BUYER.

A contract bound defendant to furnish a specific kind of lumber within a reasonable time. Defendant failed to do so, and wrote to plaintiff, excusing his failure, and advising plaintiff to look elsewhere for the lumber. Plantiff replied by stating that he had been depending on defendant, and would ask him to use every exertion possible to furnish the lumber at an early date. *Held,* that plaintiff did not rescind the contract, but regarded it as continuing.

[Ed. Note.—For cases in point, see vol. 43, Cent. Dig. Sales, § 318.]

4. APPEAL—REVIEW—DENIAL OF MOTION FOR NEW TRIAL.

The court, on appeal from an order denying a motion for a new trial, based on a ground specified in Code Civ. Proc. § 999, that the verdict is against the law, may consider the correctness of an instruction, though there is no exception thereto.

[Ed. Note.—For cases in point, see vol. 2, Cent. Dig. Appeal and Error, § 1443; vol. 3, Cent. Dig. Appeal and Error, § 3476.]

Ingraham and Laughlin, JJ., dissenting in part.

Appeal from Trial Term, New York County.

Action by John Crane and another, copartners, against William H. Barron and another, continued, on death of one defendant, against said William H. Barron as surviving defendant. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before O'BRIEN, P. J., and PATTERSON, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Theodore T. Baylor, for appellant.
William F. Clare, for respondents.

PATTERSON, J. The plaintiffs sued to recover damages for the breach of a contract alleged to have been made by them with the defendants for the sale and delivery by the latter of a certain quantity of lumber. The claim of the plaintiffs, as set forth in the complaint, is that on the 7th of November, 1902, their copartnership and that of the defendants entered into an agreement whereby the latter agreed to sell and deliver to the former 1,500 pieces of hickory plank; 400 pieces to be 3x9 inches and upwards by 20 feet long, and 100 pieces to be 4x9 inches and upwards by 20 feet long, the lengths, however, of 15 per cent. of the plank might be 18 feet long; 800 pieces to be 3x8 inches and upwards by 12, 14, and 16 feet long, and 200 pieces to be 4x8 inches and upwards by 12, 14, and 16 feet long, but as much of the foregoing 1,000 pieces to be 16 feet long as 12 feet long. The agreement also provided that the defendants could send a few pieces of the 3x8-inch planks only 10 feet long. Certain requirements of the timber were, it is alleged, also mentioned in the contract, but special reference to them is not required. It is alleged

in the complaint that the prices fixed upon by the contract were $65 per thousand feet for the longest plank and $60 for the shortest. It is further alleged that the defendants failed and refused to perform the terms and conditions of the contract and to deliver the planks, with the exception of 130 pieces delivered in May, 1903. Performance and readiness to perform on the plaintiffs' part is also alleged.

In their answer the defendants deny that they entered into the contract as alleged in the complaint, or that the plaintiffs were ready to perform its conditions. They admit that they refused to deliver some of the plank referred to in the complaint, but that they did deliver 130 pieces. They then proceed to set up, among other defenses, the following, viz.: That during the month of May, 1903, they delivered and tendered to the plaintiffs 11,859 feet of hickory lumber, but that the plaintiffs would and did receive only a part thereof, and that they ever since have, after the payment for the same became due and payable, refused to pay for the same, which refusals were in violation of the terms of the agreement referred to in the plaintiffs' complaint, if such an agreement were made, and constitute a breach, and that at the time of such refusals the defendants had performed all that was required of them under the alleged contract; and, further, that if the agreement ever were made, it was rescinded, waived, and abandoned on or about January 27, 1903. The defendants also interposed a counterclaim, which, as we view the case, it is unnecessary now to consider.

Whatever relations existed between the parties concerning the subject-matter of their dealing, as it was originally entered upon, were established by letters exchanged between them, and the learned judge who presided at the trial of the cause held, and instructed the jury as matter of law, that there was a valid binding contract executed between the parties on or about November 7, 1902. The letters alluded to fully justify the ruling of the court. On November 6, 1902, the plaintiffs wrote to the defendants:

"We are in receipt of your favor of the 5th instant, and note that you think you can get out some 20 foot plank, and we herewith give you the following memorandum, which you can saw out at once."

Then followed a description of the timber desired, specific instructions concerning the character of the wood and how it should be treated, and there was a price named for the long planks of $65 a thousand and for the short planks of $60 in New York. On the 7th of November, 1902, the defendants wrote to the plaintiffs as follows:

"We have before us your esteemed favor of November 6th, ordering 1,500 pieces of hickory, and we have sent the order to the mill with instructions to commence cutting at once. We will ship this lumber via Pennsylvania Railroad, lighterage free, unless you prefer a different delivery. We enter this as our order No. 1,449, and you will please refer to this number in further correspondence. Thanking you for the order and awaiting your further favors, we remain," etc.

The letter of the plaintiffs plainly indicates that they gave an order to the defendants for the timber therein mentioned, which the defendants were to saw out at once, and the defendants acknowledged the

order as one obligatory upon them and undertook to ship it to the plaintiffs by a certain carrier, unless a different one was preferred. There was nothing left optional with the defendants, nor was their promise to supply the lumber conditional. The quantities were specified, the price was named, and no element of a binding contract is wanting. The omission to fix a time at which the delivery should be made was supplied by the law, which would require performance within a reasonable time; and there is some evidence to show that a period of six weeks from the time of making the contract would have sufficed. That the defendants understood and acted upon the arrangement as a binding contract appears at various places in the record. In other correspondence they speak of the plaintiffs' letter as an order for the merchandise, and the evidence shows that they accepted that order and undertook to execute it. They did not furnish lumber on the contract within what is testified would have been a reasonable time for performance.

The trial justice also ruled, and so charged the jury, that without justification the defendants failed to perform the contract, or, in other words, were guilty of a breach of that contract; and he held that the breach was complete on January 26, 1903, and it was upon that breach that the plaintiffs' right to recover was predicated. He evidently must have taken the view that the defendants' failure to make delivery before January 26, 1903, put them in the wrong and gave the plaintiffs an immediate right of action. Conceding that there may have been a breach of the contract, arising from the failure to deliver the merchandise within a reasonable time, it is obvious that that breach was waived by the plaintiffs. On the 26th of January, 1903, the defendants wrote to the plaintiffs as follows:

"Referring to your letter and order of November 6th for hickory plank, would say that we wish to advise you at this time that in all probability the mill will not be able to get out this timber. We placed this order with the Southern Sawmill Co. of New Orleans, La., who have a mill at Tomnolen, Miss., where they are getting out some very nice hickory, where the writer saw their logs coming in last October before seeing you about this order. They took hold of this order, but do not seem to be making any headway on it, and we therefore wish to advise you of the outlook, so that you can protect yourselves and buy the lumber in other quarters if necessary for your contracts. If they get out any lumber which is applicable on your order, we will offer it to you before we sell it to other parties, giving you the option of taking it or not at that time; but from present indications they will have very little, if any, of it at this season."

This letter disclosed the situation in which the defendants were placed, namely, their inability to perform the contract at that time because it was out of the power of the party to whom they had confided the execution of the order in Mississippi to furnish the timber. At that stage the plaintiffs, had they so desired, could have stood upon their rights, have claimed a breach of the contract, and could have recovered such damages as they might have sustained by reason thereof. But they did not take that attitude. On the contrary, they acquiesced in the situation to the extent, at least, of waiving the breach. They wrote to the defendants under date of January 28, 1903, as follows:

"We are in receipt of your esteemed favor of the 26th instant regarding the hickory plank. We are glad that you informed us that you may have some difficulty in getting this plank, as it will give us an opportunity of trying to get it elsewhere. However, we have been depending upon you, and will ask you to use every exertion possible to give it to us at an early date. Do not let up on these people."

While there may, therefore, have been a technical breach of the contract on the part of the defendants, it is apparent that the plaintiffs condoned the breach and still urged the defendants to perform. That being so, no right of action accrued upon that particular breach.

But the defense that the plaintiffs on the 28th of January, rescinded, canceled, and waived the whole contract cannot prevail. The defendants moved for a nonsuit on that ground and duly excepted to the refusal of the court to grant it. That refusal does not constitute error. The defendants were still bound to the contract, but in a modified form. The plaintiffs relinquished the right to immediate performance, and the positive obligation of the defendants to deliver was changed into one depending upon the result of exertions to induce the mill proprietors at the South to furnish the material. The plaintiffs, in their letter of January 28th, express their gratification at the defendants' informing them of the difficulty in getting the plank, and intimate their intention to endeavor to get it elsewhere. Nevertheless, there was not an unconditional waiver of all their rights under the contract. They were still looking to the defendants performing in the future, if the material could be procured; and it undoubtedly was so regarded by the defendants, who did not understand that there was a rescission or cancellation of the entire contract. They manifestly regarded it as a continuing contract, which they were bound to carry out if they could, and to make efforts to perform. On the 1st day of July, 1903, a controversy having arisen between them and the plaintiffs, they served a formal notice on the plaintiffs as follows:

"Owing to your refusal to make settlement for the first car of hickory shipped, we hereby notify you that we cancel the balance of the order," etc.

Evidently, up to that time, they did not consider themselves wholly released from the contract by the plaintiffs' letter of January 28, 1903, and therefore the defense of waiver or rescission of the whole contract was not made out. We have, therefore, a case in which it appears that there was still a contract existing between the parties, and that it was an error of the trial justice to charge the jury that an actionable breach of the contract by the defendants occurred on or about January 26, 1903; but no specific exception was taken to that instruction. Hence the error could not be considered, if there were here only an appeal from the judgment; but there is also an appeal from an order denying a motion for a new trial upon all the grounds specified in section 999 of the Code of Civil Procedure. One ground of motion for a new trial mentioned in that section is that the verdict is against law, and that ground may be considered on appeal from the order, notwithstanding there is no exception in the record. That practice on such an appeal and in such circumstances has been often followed in furtherance of justice. Manning v. Lyon, 70 Hun, 348, 24 N. Y. Supp.

265; Ryan v. Conroy, 85 Hun, 544, 33 N. Y. Supp. 330; Gowdey v. Robbins, 3 App. Div. 353, 38 N. Y. Supp. 280; Griebel v. Rochester Printing Co., 8 App. Div. 450, 40 N. Y. Supp. 759, citing Standard Oil Co. v. Amazon Ins. Co., 79 N. Y. 506; Whittaker v. D. & H. Canal Co., 49 Hun, 400, 3 N. Y. Supp. 576; Northrup v. Porter, 17 App. Div. 80, 44 N. Y. Supp. 814.

The error in the ruling of the court we have been considering is so radical and fundamental as to require a new trial of the action; and hence it is unnecessary to consider other grounds urged by the appellants in support of their appeal from the judgment. It may be said, however, that, even if the action might have been brought as upon a breach of the contract by the defendants on January 26, 1903, the verdict of the jury awarding the sum of $1,000 to the plaintiffs for that breach was not authorized by the evidence. The learned judge charged the jury that the only question involved was one of damages, and that the measure of damages, there being no allegation of proof of special damage, was the difference between the contract price and the market value of the timber, to be ascertained at some time after January 26th, or about the first of February, 1903. There is no adequate or satisfactory proof of the market value of the kind of timber called for by the contract. It was clearly understood by both parties that Mississippi timber was the subject of the contract. Mr. Crane, one of the plaintiffs, testified that there was no market practically for Mississippi timber from December, 1902, to the spring of 1903; but he also said in his examination that the market value was between $80 and $90 a thousand. It is clear that all his ideas of value were conjectural. There is a positive statement of one of the witnesses for the plaintiffs—Kelly—that on or about February 1, 1903, the market value of the kind of timber in question was $85 for the wide, and $55 for the narrow or short. He says that is the price that he as a buyer would have paid for it, and he would swear that that was the market value from his knowledge.

Now, it is admitted that the contract might have been fulfilled by the delivery of 55,000 feet, and that about 5,000 feet were delivered. If the figures of the witness Kelly are taken, then on the short timber called for by the contract there would have been no loss whatever; on the long timber there would have been a loss to the plaintiffs of about $400. Taking the estimate of $90 for the long timber, as made by the plaintiff Crane, the loss would have been $500. The jury allowed $1,000 as damages, from which certain deductions in favor of the defendants were made, but resulting in a verdict for the plaintiffs of $723.42, an amount which the evidence did not justify.

The judgment and order appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event.

O'BRIEN, P. J., and CLARKE, J., concur.

INGRAHAM, J. I concur in the result of Mr. Justice PATTERSON'S opinion. The evidence does not establish that there was a contract for the sale and delivery of this lumber; for it was understood

that the lumber was not in existence, but was to be manufactured, and that the defendant was not to manufacture it, but that it was to be sawed for the defendant by mills in the state of Mississippi. I do not think that it was ever intended to be an absolute sale of the lumber, but that the defendant accepted the plaintiffs' offer to place the order with the mills in Mississippi, and did not at all guaranty that the Mississippi mills would manufacture the lumber; nor was there any evidence of a breach of contract. There was no time fixed at which the defendant was to deliver the lumber. It is quite evident that this was left in this way because both parties understood that the lumber was to be manufactured and the defendant was not to be obliged to deliver it until he was able to obtain it.

I agree with Mr. Justice PATTERSON that the letter of January 26, 1903, was not evidence of a breach of the contract, if there had been one.


LAUGHLIN, J., concurs.